CASE 63—PETITION EQUITY—MARCH 8.

## Louisville Gas Company v. Clay.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

BANK STOCK HELD BY A MARRIED WOMAN IN HER NAME IS NOT HER SEPARATE ESTATE under section 15, article 4, chapter 52, General Statutes, unless there is some indication or expression on the face of the certificate or transfer-book of such stock to the effect that it is for her "use." The requirement of the statute, that it shall be expressed "that it is for the use of such female," means the same thing as the requirement of the former statute that it should be expressed to be for her "exclusive use;" and in the absence of some such indication or expression other than the mere fact that the stock was taken in the name of the "female," the statute extinguishing the marital rights of the husband has no application, and upon the death of the wife the stock passes as any other unfettered personalty belonging to her.

HUMPHREY & DAVIE FOR APPELLANT.

The attitude of our client is simply that of one desiring to be protected

against a double liability; and while we should much prefer to see the statute construed strictly, and to see the courts holding that the word "use," as it now appears in the statute, is equivalent to the words "exclusive use," as they appeared in the Act of 1838, and the Revised Statutes, yet so striking a change in the phraseology of the statute has induced us to insist upon its judicial construction. (See Gen. Stats., chap. 52, art. 4, sec. 15; Kent's Adm'r v. Deposit Bank of Owensboro, 91 Ky., 70; Harris v. Harbison, 9 Bush, 399; Bank of Louisville v. Gray, 84 Ky., 571.)

BARNETT, MILLER & BARNETT for appellee.

Brief withdrawn.

JUDGE HAZELRIGG delivered the opinion of the court.

Mrs. Pattie A. Clay died in December, 1891, leaving a husband, the appellee, and five children surviving her. The husband qualified as the administrator of his wife, and as guardian for his children.

When she died, Mrs. Clay was the owner of one hundred shares of the capital stock of the appellant, which had been issued to her in the usual form; the certificates reading that "Pattie A. Clay is entitled to . . . shares of the capital stock in the Louisville Gas Company, transferable in person or by attorney on the books of the company at their office in Louisville." Neither upon the face of the certificates nor on the stock-book of the company was there expressed any "use" to the holder, separate or otherwise.

The question on this appeal is, does the stock in question descend to the children of Mrs. Clay, or does it pass to her husband? The statute supposed to control the subject (General Statutes, chapter 52, article 4) is as follows:

"§ 15. If any stock in any of the banks or other corporations of this State is taken for or transferred to any female, and it is expressed on the face of the certificate

or transfer-book of such stock that it is for the use of such female, no husband of hers shall take any interest in such stock or the dividends thereon, and at her death it shall pass to her heirs; but if unmarried, she may dispose of it by will; or, if married, so dispose of it, with the consent of her husband, or without such consent, if so provided in the deed or will creating the trust. She may receive the dividends and give acquittances therefor, though married; but she shall not, in any way, anticipate the same, nor shall any dividend be paid upon an order or power given by her before the same is declared."

It seems to us that in order to impress on the stock the quality which extinguishes the husband's marital rights, two things are necessary:

1. The stock must be taken for her or transferred to her.

2. There must be some expression or indication on the face of the certificate or transfer-book of the stock to the effect that the stock is "for the use of the female."

It may be argued that if the stock stand in her name, she necessarily has the use of it, as it would be absurd to say that she had not the use of this which she owns. But the use she has as such owner is not the use created by the terms of the statute. The provision that the stock "is for the use of such female," when expressed on the certificates or stock-book, raises or creates a trust, and the statute in question operates to exclude the husband from taking any interest therein, although it may not be disposed of by will save with his consent. Unless these words, or words of similar import, are so expressed, we think the statute has no application in controlling the disposition or destination of the stock. It goes as any

other unfettered personalty of the wife. That which was to be expressed on the certificates under the old statute on this subject was, that such stock was " for the *exclusive* use of such female," and it is argued that by the omission of the word " exclusive," the present statute creates the trust, even if it be not expressed on the certificates of stock that it is for the use of the female.

This is but a repetition of the argument before alluded to—that the use of the property must follow its ownership, and that by simply putting it in the name of the female the use of it is implied. This construction renders nugatory the important requirement that upon the face of certificates, or on the stock-book, there must be expressed " that it is for the use of the female." If such had been the intention the statute would have read, " that when stock in any of the banks or other corporations of this State is taken for or transferred to any female, no husband of hers shall take any interest," etc.

We think the words of the present statute, "for the use of such female," mean the same thing as the words of the old statute, "for the exclusive use of such female," and that unless the certificate or transfer-book of the stock contains some such words indicative of the creation of such "use" in the female, the statute in question extinguishing the marital rights of the husband does not apply.

The judgment of the chancellor, giving the stock to the husband, is *affirmed*.